UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH WILBORN,

    Plaintiff,

v.

DAVID EALEY, *et al.*,

    Defendants.

Case No. 13-cv-70-JPG-PMF

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 193) of Magistrate Judge Philip M. Frazier recommending the Court grant the motion for summary judgment filed by defendants Lakeisha Hamby and Shelby Dunn (Doc. 140) and dismiss Count 5 to the extent it is against those defendants. Plaintiff Joseph Wilborn has objected to the Report (Doc. 197).

**I.    Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    Background**

On July 28, 2011, Wilborn was transferred from Menard Correctional Center to Tamms Correctional Center ("Tamms") late one night after being in an altercation. On arrival at Tamms, he was examined by nurses Hamby and Dunn. They observed that his shoulder was dislocated,

gave him Tylenol, and placed him on the next available doctor call. The prison doctor saw Wilborn the following day, and Wilborn remained in the Health Care Unit ("HCU") until August 23, 2011. In this lawsuit, Wilborn complains that Hamby and Dunn did not immobilize and ice his dislocated shoulder, reduce the dislocation or arrange for a transfer to a hospital where he could immediately be seen by a doctor.

Wilborn wrote a grievance on September 23, 2011, and sent it to his counselor through the prison mail system. The counselor did not receive it, so Wilborn gave him a copy of the grievance on September 28, 2011. In that grievance, Wilborn complained that he did not receive medical attention from a doctor until July 29, 2011. He did not specifically refer to Hamby or Dunn or the treatment they provided him in that grievance but complained that "[a]ll the Tamms C.C. employees" should have arranged for the doctor to see him immediately and that Tamms should have had a doctor present at all hours of the day. After receiving a written response from his counselor on October 6, 2011, saying he was evaluated by a doctor at the first opportunity, Wilborn sent the grievance to the grievance officer. On November 7, 2011, the grievance officer denied it as untimely because Wilborn had submitted it to the grievance officer more than 60 days after the July 28, 2011, circumstances about which he complained.

Wilborn wrote an emergency grievance on September 16, 2012. In this grievance, he complained about the medical treatment he received on the night of July 29, 2011, and he specifically mentioned that Hamby and Dunn refused his request to be sent to a hospital outside the prison and refused to provide follow-up treatment for his injury. On October 9, 2012, the ARB rejected it as untimely.

**III.     Report and Objection**

In the Report, Magistrate Judge Frazier found that Wilborn's September 16, 2012, grievance was untimely, as determined by the ARB.  Therefore, it was not filed "in the place, and at the time, the prison's administrative rules require."  *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006) (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits).  The Illinois Department of Corrections ("IDOC") requires that a grievance "shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance."  20 Ill. Admin. Code § 504.810(a).  Wilborn knew of Hamby's and Dunn's conduct on July 28, 2011, so his 60 days began to run then and expired September 26, 2011.  Thus, the September 16, 2012, grievance was not properly filed and did not serve to exhaust Wilborn's administrative remedies as to Hamby and Dunn as required by 42 U.S.C. § 1997e(a).

Magistrate Judge Frazier also found that Wilborn's September 23, 2011, grievance did not satisfy IDOC's requirement that a grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. . . . [or] as much descriptive information about the individual as possible."  20 Ill. Admin. Code § 504.810(b).  Magistrate Judge Frazier noted that the gravamen of Wilborn's grievance was an objection to the policy of not having a doctor at the prison at all hours of the day and that Wilborn did not mention nurses or deficient nursing care while he waited to see a doctor.  Magistrate Judge Frazier further found that Wilborn's criticism that "[a]ll the Tamms C.C. employees" failed to arrange for him to see a doctor

immediately was not sufficient to alert the prison to his complaints about Hamby's and Dunn's conduct. Thus, the September 23, 2011, grievance also did not serve to exhaust Wilborn's administrative remedies as to Hamby and Dunn as required by 42 U.S.C. § 1997e(a).

In his objection, Wilborn argues that his September 23, 2011, grievance contained sufficient details to alert prison officials to the problem, as evidenced by his counselor's substantive response to the grievance. He further believes his complaint about "[a]ll employees" covers Hamby and Dunn and that it was unreasonable to expect him to provide their specific names in his grievance. He also faults his counselor for failing to respond to his grievance until more than 60 days after the incident, when it was too late to comply with the grievance timing requirements. Wilborn argues that since a counselor's response is necessary to file a grievance, the counselor's failure to respond to his grievance within 60 days of the incident was the reason he could not file a timely grievance. Wilborn also argues that his September 16, 2012, grievance was timely because he did not discover the alleged reason for Hamby's and Dunn's conduct – retaliation – until then.

## IV.   Analysis

The Court has reviewed the matter *de novo* and agrees with Magistrate Judge Frazier's conclusions, although for slightly different reasons in some instances.

As for the September 16, 2012, grievance, it was untimely because Wilborn filed it more than a year after the July 28, 2011, incident. It does not matter that it was not until September 2012 that Wilborn began to suspect the conduct was retaliatory; he knew about "the incident, occurrence, or problem," 20 Ill. Admin. Code § 504.810(a), on July 28, 2011, and needed to file a grievance within 60 days of that date. Wilborn failed to follow IDOC's rules about grievance

deadlines, so his grievance was not properly filed since it was not filed "at the time, the prison's administrative rules require." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). Thus, the September 16, 2012, grievance did not serve to exhaust Wilborn's administrative remedies as to Hamby and Dunn.

The Court now turns to the September 23, 2011, grievance. As noted above, Illinois administrative rules require an inmate to describe the details of the incident about which he complains. *See* 20 Ill. Admin. Code § 504.810(b). To satisfy this requirement, a grievance must contain enough details to alert prison officials of the particular acts about which he complains and to invite corrective action. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (noting the function of a grievance is "alerting the state and inviting corrective action"). A grievance's main purpose is not to give notice to individuals who might later be sued. *Id.* If prison officials address the merits of the grievance, the grievance has served its purpose. *Id.* Prison officials cannot later take refuge in the lack of detail in the grievance to argue it did not comply with prison rules. *Id.*

Wilborn's September 23, 2011, grievance contains enough detail to alert the prison that Wilborn was unhappy that he was not able to see a doctor on the night of July 28, 2011. It does not contain sufficient detail to alert the prison that he was unhappy with the nursing treatment that was provided by Hamby and Dunn. Thus, to the extent Wilborn argues Hamby and Dunn were deliberately indifferent because they failed to immobilize and ice his dislocated shoulder or failed to reduce the dislocation, he has not exhausted his administrative remedies.

To the extent Wilborn argues Hamby and Dunn were deliberately indifferent because they

failed to arrange for a transfer to a hospital where he could be seen immediately by a doctor, his grievance was sufficient to alert prison officials of that complaint. Although he did not mention Hamby or Dunn by name, it was clear enough to Wilborn's counselor that the alleged culprits included the personnel who saw Wilborn in the HCU, who prison officials could easily identify. Furthermore, Wilborn's counselor was able to respond to the substance of the grievance, demonstrating the grievance served its function.

As for the timeliness of the grievance, the incident about which Wilborn complained occurred on July 28, 2011, so a grievance must have been submitted to the grievance officer within 60 days, that is, on or before September 26, 2011. *See* 20 Ill. Admin. Code § 504.810(a). Wilborn did not submit his grievance to the grievance officer until after October 6, 2011, when he received his counselor's response. Wilborn claims he was prevented from filing a timely grievance by his counselor's delayed response, so he should be excused from the exhaustion requirement. In fact, Wilborn was responsible for his own untimeliness. First of all, an inmate does not need a written response from his counselor before moving forward with a grievance. *Jackson v. Shepherd*, 552 Fed. App'x 591, 592 (7th Cir. 2014) (citing *Owens v. Hinsley,* 635 F.3d 950, 955 (7th Cir. 2011)). Wilborn could have and should have sent his grievance to the grievance officer on or before September 26, 2011, regardless of whether he had received a written response from his counselor. To the extent he believed he needed a counselor's response, Wilborn had plenty of time to address the matter with his counselor before the 60-day period expired. He has not offered any reason why he waited until September 23, 2011, a Friday, to place an item *in the mail* to his counselor when the deadline for submitting his grievance was the following Monday. He had plenty of time to address the matter with his counselor – at least after

his release from the HCU on August 23, 2011 – and he failed to do so.  This is the reason his grievance was late.

### V.      Conclusion

For these reasons, the Court agrees with Magistrate Judge Frazier that Wilborn has failed to properly file a grievance and therefore to exhaust his administrative remedies as to Hamby and Dunn.  Accordingly, the Court:

- **ADOPTS** the Report (Doc. 193) as **MODIFIED** by this order;

- **OVERRULES** Wilborn's objections (Doc. 197);

- **GRANTS** the motion for summary judgment filed by Hamby and Dunn (Doc. 140);

- **DISMISSES** Wilborn's claims in Count 5 (deliberate indifference to medical needs) against Hamby and Dunn **without prejudice** for failure to exhaust administrative remedies; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:   March 17, 2015**

               s/ J. Phil Gilbert
               **J. PHIL GILBERT**
               **DISTRICT JUDGE**