UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH WILBORN,

    Plaintiff,

v.

DAVID EALEY, *et al.*,

    Defendants.

Case No. 13-cv-70-JPG-PMF

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Joseph Wilborn's motion to alter or amend (Doc. 204) the Court's March 17, 2015, order (Doc. 202) granting the motion for summary judgment filed by defendants Lakeisha Hamby and Shelby Dunn (Doc. 140) on the grounds that Wilborn had failed to exhaust his administrative remedies. Specifically, the Court found that neither Wilborn's grievance dated September 23, 2011, nor his grievance dated September 16, 2012, was filed with a grievance officer within 60 days of the July 28, 2011, incident about which he complains as required by Illinois Department of Corrections ("IDOC") rules. The defendants have responded to Wilborn's motion (Doc. 219), and Wilborn has replied to that response (Doc. 224). The Court also considers other pending motions (Docs. 256 & 270).

**I.    Background**

On July 28, 2011, Wilborn was transferred from Menard Correctional Center to Tamms Correctional Center ("Tamms") late at night after being in an altercation. On arrival at Tamms, he was examined by nurses Hamby and Dunn. They observed that his shoulder was dislocated, gave him Tylenol, and placed him on the next available prison doctor call. The prison doctor saw Wilborn the following day, and Wilborn remained in the Health Care Unit ("HCU") until August 23, 2011. In this lawsuit, Wilborn complains that Hamby and Dunn were deliberately indifferent

to his serious medical need in violation of the Eighth Amendment because they did not immobilize and ice his dislocated shoulder, reduce the dislocation or arrange for a transfer to a hospital where he could immediately be seen by a doctor.

Wilborn claims he wrote a grievance on September 23, 2011, and sent it to his counselor through the prison mail system. The counselor said he did not receive it, so Wilborn gave him a copy of the grievance on September 28, 2011. In that grievance, Wilborn complained that he did not receive medical attention from a doctor until July 29, 2011. He received a written response from his counselor on October 6, 2011, saying he had been evaluated by a doctor at the first opportunity. Wilborn sent the grievance to the grievance officer, who on November 7, 2011, denied it as untimely.

In its March 17, 2015, order (Doc. 202), the Court held, among other things, that Wilborn's September 23, 2011, grievance was untimely because Wilborn submitted it to the grievance officer more than 60 days after the July 28, 2011 incident. The 60th day after July 28, 2011, was September 26, 2011. Accordingly, the Court dismissed Wilborn's claims against Hamby and Dunn.

In his motion for reconsideration, Wilborn asks the Court to reconsider this dismissal because he filed his grievance within 60 days of being released from the health care unit on August 23, 2011. He also believes mailing his grievance to his counselor counted as filing the grievance with the grievance officer and that he should not be responsible for the fact that his counselor did not respond to his Friday, September 23, 2011, grievance over the weekend in time for Wilborn to send it to the grievance officer on Monday, September 26, 2011. He cites in support of his argument testimony from another case that (1) grievance officers will return a grievance to an inmate if it fails to contain a counselor's written response, and (2) counselors can take as long as 90

days to respond to a grievance, which would render a 60-day deadline for filing *with a grievance officer* absurd and sometimes impossible to comply with. See *Singleton v. Tangman*, No. 13-cv-1301-MMM-JEH, 2014 WL 4668672, at * 3 (C.D. Ill. 2014).

The defendants argue that IDOC rules require a grievance be filed *with the grievance officer*, not a counselor, within 60 days. Thus, Wilborn's mailing his grievance to his counselor for the counselor's response within 60 days does not satisfy IDOC's explicit requirements.

The Court held an evidentiary hearing on the matter on August 26, 2015, to supplement the evidence in the record. See *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The Court was particularly concerned with the questions of (1) whether Wilborn actually sent a grievance to his counselor by placing it in the prison mail system on September 23, 2011, and (2) whether his efforts complied with IDOC rules as written or with another "accepted means of submitting a grievance" within the prison, see *Curtis v. Timberlake*, 436 F.3d 709, 711-12 (7th Cir. 2005).

At the hearing, Wilborn was present in person appearing *pro se*, Hamby and Dunn were present through counsel Andrew Ramage, and the remaining defendants were present through counsel Amber Porter. Hamby and Dunn presented one live witness (Wilborn) and three witnesses by videoconference (Rick Ridgley, Toma Branche (formerly Toma Osman) and Terri Anderson). Wilborn presented his own live testimony and the live testimony of Arnold Castillo. The Court will discuss the witnesses' testimony as necessary in its discussion of Wilborn's attempt to exhaust his administrative remedies.

## II. Analysis

### A. Legal Standards

The Prison Litigation Reform Act provides that a prisoner may not file a § 1983 suit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see*

3

*Woodford v. Ngo*, 548 U.S. 81, 87-88 (2006). Because the failure to exhaust administrative remedies is an affirmative defense, it is the defendants' burden to prove by a preponderance of the evidence that the plaintiff did not exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

A grievance must be filed "in the place, and at the time, the prison's administrative rules require . . . [and] . . . contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford*, 548 U.S. at 90, 93 (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits).

> IDOC rules state:
>
> a) An offender shall first attempt to resolve incidents, problems, or complaints other than complaints concerning disciplinary proceedings through his or her counselor. If an offender is unable to resolve the complaint informally . . ., the individual may file a written grievance on a grievance form that shall be made available in all living units. A grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered. . . .
>
> b) The grievance form shall be addressed to the Grievance Officer and shall be deposited in the living unit mailbox or other designated repository. . . .

20 Ill. Adm. Code 504.810(a). There is no deadline by which a counselor must respond to an inmate's complaint. When a grievance officer receives a grievance, he investigates and reports his findings and recommendations to the chief administrative officer – the warden – who then makes a decision on the grievance. 20 Ill. Adm. Code 504.830(d). If the inmate is not satisfied with the warden's decision, he may appeal that decision to the director of IDOC. 20 Ill. Adm. Code 504.850(a). The director may make a decision on the grievance or refer the matter to the

administrative review board ("ARB") for findings and recommendations. 20 Ill. Adm. Code 504.850(b). After reviewing the findings and recommendations, the director then makes the final decision on the matter. 20 Ill. Adm. Code 504.850(f).

While this is the express statement of how to exhaust administrative remedies, if there is another unofficial procedure commonly accepted in the prison, it may constitute filing a written grievance under 20 Ill. Admin. Code 504.810(a). *See Curtis v. Timberlake*, 436 F.3d 709, 711-12 (7th Cir. 2005). In *Curtis*, the Court of Appeals found that there was an issue of fact about whether hand-delivering a grievance to a social worker, as opposed to depositing it in the lockbox designated for grievances as required by IDOC rules, was an accepted alternative means of "submitting a grievance to a grievance officer." *Id.*

B.      Factual Findings

The following facts are essentially undisputed. Wilborn placed a grievance dated September 23, 2011, in the prison mail system to his counselor Rick Ridgley on September 23, 2011. That grievance was lost. Ridgley did not receive the grievance dated September 23, 2011, until Wilborn handed it to him in person on September 28, 2011. Ridgley investigated the grievance and gave Wilborn his written response on the grievance form eight days later, on October 6, 2011. On November 6, 2011, Wilborn added a statement to the second page of his grievance and submitted it to the grievance officer, Toma Branche. This was 95 days after the July 28, 2011, incident about which Wilborn was complaining.

Branche testified to the following facts, and based on her demeanor and the reasonableness of her testimony in light of the other evidence in the case, including an otherwise problematic deadline in IDOC rules, the Court found her testimony credible. Branche received and reviewed the grievance on November 7, 2011, and saw that Wilborn had not submitted it to her within 60

days of the incident about which he complained. At the time, Tamms grievance officers had an unwritten policy of considering how long a grievance had been with the counselor to determine whether a late grievance should be considered on the merits despite its lateness. Branche recognized Ridgely had held Wilborn's grievance for eight days and essentially extended his 60-day deadline by eight days. Nevertheless, Wilborn's grievance, filed 95 days after the relevant incident, did not even come close to meeting this adjusted 68-day deadline, so Branche rejected it as untimely. Had Wilborn submitted his grievance shortly after he received Ridgley's written response, Branche would have accepted it and considered it on the merits. Instead, because Wilborn waited a month after receiving Ridgley's response to submit it to Branche, she deemed it untimely and did not consider it on the merits.

Wilborn testified that he waited so long to submit the grievance to Branche because he wanted to have a copy of the grievance made before submitting it. While it might be a wise idea, making a copy of a grievance is not a necessary step in the grievance procedure.

Wilborn did not appeal Branche's decision to the ARB. Terri Anderson, the ARB's manager of inmate issues, testified credibly that had Wilborn appealed, the ARB would have recommended upholding Branche's untimeliness finding.

Wilborn was able to submit to Ridgley a grievance dated August 24, 2011, regarding a correctional officer's failure to feed Wilborn breakfast on July 29, 2011, his first morning at Tamms. Ridgley received the grievance on September 7, 2011, and responded on September 14, 2011.

    C.    <u>Legal Conclusions</u>

Wilborn's submission of his grievance *to Ridgley* on September 23, 2011, through the prison mail system did not satisfy IDOC's written rules or alternative accepted practices, both of

which require a grievance to be submitted *to a grievance officer* within 60 days of discovery of the incident, not a counselor.

Administrative remedies were available to Wilborn because he was not prevented from filing a timely grievance with a grievance officer within 60 days of the July 28, 2011, incident. Once he was released from the HCU on August 23, 2011, there was no impediment to his submitting a grievance to his counselor in sufficient time for his counselor to investigate and respond before the 60-day deadline (or any appropriately adjusted deadline) such that Wilborn could file a timely grievance with the grievance officer. This is demonstrated by Wilborn's August 24, 2011, grievance and Ridgley's prompt response to it. It is Wilborn's fault that he waited until the 57th day of the 60-day period to give his grievance to his counselor for informal resolution. Inmates will not be relieved of the obligation to exhaust their administrative remedies because they wait until the eleventh hour to seek a response from their counselor.[1]

Wilborn's submission of his grievance to Branch on November 6, 2011, did not satisfy IDOC's written or unwritten rules requiring a grievance be submitted to a grievance officer *within 60 days, adjusted for time the counselor held the grievance*. Additionally, because making a copy of a grievance is not a necessary step in the grievance process, delaying submitting a grievance to the grievance officer in order to make a copy does not justify or provide good cause for submitting a grievance a month late.

---

[1] Wilborn believes, and the evidence supports, that his grievance would have been rejected had it not had a written counselor's response. However, the requirement for a written counselor's response is contained nowhere in IDOC regulations; all that is required is an attempt to resolve the dispute informally with the counselor. See 20 Ill. Adm. Code 504.810(a); *Jackson v. Shepherd*, 552 F. App'x 591, 592 (7th Cir. 2014) (citing *Owens v. Hinsley,* 635 F.3d 950, 955 (7th Cir. 2011)). Where an inmate has made informal attempts to resolve the matter with his counselor, but prison officials reject a grievance for failure to have a *written* counselor's response, it is likely the Court would find prison officials have rendered further administrative remedy steps unavailable by requiring more than IDOC rules require. This is not what happened in this case, so the Court makes no finding on the issue.

Wilborn's confinement in the HCU until August 23, 2011, plays no role in this analysis since it, as noted above, it did not prevent him from filing a timely grievance once he was released from the HCU.

Wilborn did not file his grievance "at the time[] the prison's administrative rules require." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). He has therefore failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). Consequently, his claims against Hamby and Dunn for failing to send him outside the facility for a doctor's care on July 28, 2011, must be dismissed without prejudice.

### III.     Other Pending Motions

Wilborn asks the Court for oral argument on his motion to alter or amend the judgment (Doc. 270). He wishes to point the Court to recently decided cases he believes are relevant to the issues in this case: *White v. Hodge*, No. 14-cv-92-MJR-SCW, 2015 WL 1887735 (S.D. Ill. Apr. 24, 2015), and *Woods v. Forehand*, No. 13-cv-1130-NJR-DGW, 2015 WL 1188326 (S.D. Ill. Mar. 12, 2015). The Court has reviewed the cases and finds they are not of assistance to Wilborn. *White* involves a situation where the warden failed to satisfy a two-month deadline for ruling on a grievance, and further remedies were therefore deemed "unavailable." *White*, 2015 WL 1887735, at * 6. Similarly, *Woods* involved the ARB's failure to decide an appeal of a warden's decision months after the recommended six-month deadline, and the court held that the inmate was not required to wait for the overdue ARB response before filing suit. *Woods*, 2015 WL 1188326, at * 5. Neither situation is comparable to Ridgley's taking six days to respond to Wilborn's eleventh-hour grievance, which appears to be a reasonable counselor response time. Additionally, the Court finds Wilborn has adequately articulated his arguments in his written filings and at the August 26, 2015, hearing; further argument is not necessary. For these reasons,

the Court will deny Wilborn's motion for oral argument (Doc. 270).

Defendants Ricky Daugherty, Derek Richardson and Christopher Wehrenberg ask the Court for leave to file a late motion for summary judgment on the issue of exhaustion (Doc. 256). The deadline for such motions was July 18, 2014 (Doc. 133), and these defendants did not file timely motions. Furthermore, on October 28, 2014, Magistrate Judge Philip M. Frazier allowed Daugherty, Richardson and Wehrenberg to file their answer nearly nine months late but ordered that "[t]hey may not assert affirmative defenses or file motions seeking summary judgment on the exhaustion issue" (Doc. 171). In blatant disregard of Magistrate Judge Frazier's order, these defendants asserted a failure to exhaust affirmative defense (Doc. 172). Several weeks ago, apparently seeing Hamby and Dunn had obtained some success on their failure to exhaust affirmative defense, Daugherty, Richardson and Wehrenberg asked for reconsideration of Magistrate Judge Frazier's ruling barring motions for summary judgment based on the failure to exhaust (Doc. 256). They offer no justification to alter the Court's prior scheduling order other than that essentially, as long as the Court is holding a hearing on the matter with respect to Hamby and Dunn, it should look into the matter for Daugherty, Richardson and Wehrenberg as well. They do not explain why they have waited nearly ten months to ask for reconsideration. Additionally, they have not established good cause for altering a scheduling order, and the Court does not think it is appropriate at this late stage of the case to reopen another round of summary judgment. *See* Fed. R. Civ. P. 16(b)(4). Accordingly, the Court will deny the motion.

### IV.   Conclusion

For the foregoing reasons, the Court:

- **DENIES** Wilborn's motion to alter or amend the Court's March 17, 2015, order (Doc. 204);
- **REAFFIRMS** the Court's original ruling granting Hamby and Dunn's motion for

summary judgment based on the failure to exhaust for the reasons stated in the Court's March 17, 2015, order and supplemented by this order;

- **DENIES** Wilborn's motion for oral argument (Doc. 270);

- **DENIES** Daugherty, Richardson and Wehrenberg's motion for reconsideration of Magistrate Judge Frazier's October 28, 2014, order (Doc. 256); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:   September 11, 2015**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
